UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JASON TURNER,

                Petitioner,                No. 2:17-cv-14119

v.

                                            Paul D. Borman

THOMAS WINN,                        United States District Judge

                Respondent.

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Robert Jason Turner, ("Petitioner"), confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, challenging his convictions for two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) & (b), and one count of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(2)(b). For the reasons that follow, the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I.    BACKGROUND

Petitioner was convicted following a jury trial in the Delta County Circuit Court.

Petitioner provided a detailed statement of facts in his petition for a writ of habeas corpus. Respondent also provided a detailed factual summary of the case, which does not essentially conflict with Petitioner's statement of facts. The Court accepts the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Cristini v. McKee,* 526 F.3d 888, 894, n. 1 (6th Cir. 2008). Since the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner's conviction arose from the repeated sexual assaults of his daughter, B.T., starting when she was five years old.[1] B.T. testified that Petitioner began sexually molesting her when she was five years old, with the acts progressing to various forms of sexual penetration as she got older. (ECF No. 6-7, Trial Transcript, PgID 363–78.)

Sara Kofsky, a Sexual Assault Nurse Examiner (SANE), interviewed B.T. after B.T. reported the ongoing sexual abuse. (*Id.* at PgID 455–56.) B.T. told Kofsky that Petitioner would come into her room when her mother was sleeping, and approach her from behind before raping her. (*Id.* at PgID 460–61.) Kofsky also

---

[1] Because the victim was a minor at the time of the offense, the Court refers to her by only her initials to preserve her privacy. *See* Fed. R. Civ. P. 5.2(a).

2

performed a physical examination of B.T. and found that her hymen did not cover her vagina. Kofsky testified that this was consistent with, but not necessarily conclusive proof of, sexual activity. (*Id.* at PgID 465–66.)

Michigan State Police Trooper Dale Hongisto interviewed Petitioner after speaking with B.T. and her mother. (*Id.* at PgID 440.) Trooper Hongisto went to Petitioner's work, introduced himself, and asked if they could talk at the state police post. (*Id.* at PgID 441.) Petitioner told Trooper Hongisto he would meet with him shortly. (*Id.*) Trooper Hongisto returned to the post and Petitioner arrived approximately half an hour later. (*Id.*) They then went into an interview room and discussed the allegations. (*Id.* at PgID 441–42.) Petitioner denied sexually assaulting the victim but told Hongisto that sometimes when he came home from work he would sleep with B.T. in her bed for a few hours before going to his own bed. (*Id.* at PgID 442–43.) He further told Hongisto that B.T. "kicks in her sleep quite often." (*Id.* at PgID 443.)

While incarcerated in jail awaiting trial, Petitioner called his wife several times. (ECF No. 6-9, Trial Transcript, PgID 623.) During one conversation, Petitioner told his wife, "I wish someone would beat the f[] out of her, knock her head off or something. Talk to her." (*Id.* at PgID 624.) Petitioner was under a no-contact order from B.T. at the time, which also prohibited Petitioner from asking other persons to contact B.T. (*Id.*) Petitioner told his wife, "Tell her to drop this stuff

for me if she has any heart for me at all." (*Id.*) On one occasion, Petitioner told his wife to "[b]eat [B.]." (*Id.*) Petitioner told his wife several times, "Tell her I'm f[] sorry for whatever. Get me the f[] out of here." (*Id.* at PgID 625.) In another conversation, Turner said, "Tell her to forgive me. Get me the f[] . . . do something." (*Id.*)

Four other children also testified that Petitioner sexually abused them. (ECF No. 6-7, Trial Transcript, PgID 475–80, 484, 487–90; ECF No. 6-8, Trial Transcript, PgID 521–26, 534–38.)

Petitioner raised the following claims on his appeal of right:

I.      Complainant was biased against Defendant and had an ulterior motive of covering up in making false allegations.

II.     Improper other acts testimony required a new trial.

Petitioner's conviction was affirmed. *People v. Turner*, No. 317095, 2014 WL 5306092 (Mich. Ct. App. Oct. 16, 2014); *lv. den.* 497 Mich. 984 (2015).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Turner,* No. 12-8695-FC (Delta County Cir. Ct., Jan. 12, 2016) (ECF No. 6-12, PgID 811–15) *reconsideration den*. *People v. Turner,* No. 12-8695-FC (Delta County Cir. Ct., July 6, 2016) (ECF No. 6-14). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Turner,* No. 333885 (Mich. Ct. App. Nov. 16, 2016) (ECF No. 6-17, PgID 979) *lv. den.* 501 Mich. 878 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

4

I.      The Petitioner Robert Turner was denied his constitutional due process and equal protection rights to the effective assistance of counsel under the U.S. VI and XIV Amendments and the Michigan Constitution 1963, Art, 1, subsection 17, 20.

II.     The Petitioner Robert Turner was denied his constitutional due process and equal protection rights to a fair and impartial trial under the IV, V, VI and XIV Amendments and the Michigan Constitution 1963 Art 1, subsection 17 and 20 because of defense attorney's ineffective assistance.

III.    The Petitioner Robert Turner was denied his constitutional due process and equal protection rights to the effective assistance of counsel under the U.S. XIV Amendment on his appeal as of right.

IV.     Rebuttal to Michigan Court of Appeals' affirmation.

(ECF No. 1, Petition, PgID 8–9.)

## II.   STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of

5

the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

Petitioner's claims were raised in his post-conviction motion for relief from judgment. In reviewing a claim under the AEDPA's deferential standard of review,

6

this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)). The Michigan Court of Appeals and the Michigan Supreme Court both denied Petitioner's post-conviction application for leave to appeal in unexplained one-sentence orders. Accordingly, this Court must "look through" these decisions to the Delta County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. Then, the Court can decide whether that court's adjudication of Petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011).

## III.   DISCUSSION

The Court will discuss Petitioner's claims together because they all allege the ineffective assistance of trial or appellate counsel.

A defendant is required to satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. *Id.* at 689. The

7

presumption is that, under the circumstances, the challenged action might be sound trial strategy. *Id.*

Second, the defendant must show that such performance prejudiced his defense. *Id.* at 689. To demonstrate prejudice, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies to claims of ineffective assistance of both trial and appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

Petitioner in his first and second claims alleges that he was denied the effective assistance of trial counsel. (ECF No. 1, Petition, PgID 8.)

Petitioner first alleges that his trial counsel should have objected to the criminal complaint, warrant, and information filed in this case because they all list Michigan State Police officers as the complainant and the complaining witness. (*Id.* at PgID 16–17. ) Petitioner argues that this was improper because they should have listed the victim or the victim's mother as the complaining witness. (*Id.*)

8

The trial court judge rejected this claim, finding that it was not improper under Michigan law to name a state trooper and not the victim or her mother as the complaining witness on the charging documents. (ECF No. 6-12, PgID 811–12.)

Numerous Michigan cases have held that a criminal complaint, warrant, or information are valid even if they were signed by a police officer rather than by the victim of the crime. *People v. Carriger*, 37 Mich. App. 605, 609 (1972); *People v. Luster*, 34 Mich. App. 447, 450–51 (1971); *People v. Gilleylen*, 31 Mich. App. 416, 423 (1971); *People v. Hosack*, 16 Mich. App. 552, 553 (1969); *People v. Andriacci*, 11 Mich. App. 482, 485–86 (1968).

Secondly, assuming that Petitioner's arrest was illegal, he would still not be entitled to relief.

"An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975), *Frisbie v. Collins*, 342 U.S. 519 (1952), and *Ker v. Illinois*, 119 U.S. 436 (1886)). The Supreme Court held that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the

constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *United States v. Crews*, 445 U.S. at 474.

Petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest. The mere fact that the complaint or warrant was somehow defective would not prevent him from being prosecuted and convicted of this offense. Thus, failing to file a frivolous motion to dismiss does not constitute ineffective assistance of counsel. *See Goldsby v. U.S.,* 152 F. App'x 431, 438 (6th Cir. 2005). Because a challenge to the legality of Petitioner's arrest would not have resulted in his release from custody, counsel was not ineffective for failing to file a motion to dismiss on this basis. *See Friday v. Pitcher,* 200 F. Supp. 2d 725, 738–39 (E.D. Mich. 2002).

Petitioner also alleges that trial counsel was ineffective by failing to object to the charging documents which referred to the victim as "Jane Doe." (ECF No. 1, Petition, PgID 20–21; *see* ECF No. 6-6, Trial Transcript, PgID 198–99.) It is common to refer to minor victims by their initials or another generic identifier for privacy reasons given the sensitive nature of sexual crimes. *See, e.g.*, Fed. R. Civ. P. 5.2(a) (requiring use of initials to identify minors). There was no reason for counsel to object to the charging documents. If counsel had objected, there is no reasonable

probability of a different outcome given that the victim's identity was well known to the court, parties, and jury. The victim's real name was later identified once the jury was selected and sworn. (*See* ECF No. 6-6, Trial Transcript PgID 334–35.)

Petitioner next claims that trial counsel was ineffective for failing to move to recuse the district court judge who presided over his preliminary examination, claiming that this judge was biased or laboring under a conflict of interest because he was the same judge that signed the criminal complaint and warrant in this case. (ECF No. 1, Petition, PgID 17.)

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). However, to state a claim that a judge is biased, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. *United States v. Lowe*, 106 F.3d 1498, 1504 (6th Cir. 1997). "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" *Getsy v. Mitchell,* 495 F.3d 295, 311 (6th Cir. 2007) (quoting *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006)).

At least one Michigan court case has held that a district court judge is not required to disqualify himself from presiding over a preliminary examination simply because that judge previously issued an arrest or search warrant, in the absence of a

showing of actual bias. *People v. Laws*, No. 341739, 2019 WL 1574772, at *6–7 (Mich. Ct. App. Apr. 11, 2019), *lv. den.*, 504 Mich. 998 (2019).

In this case, the judge on post-conviction review rejected this claim, because Petitioner failed to show that the district court judge was biased against him. (ECF No. 6-12, PgID 812.) Because Petitioner has failed to show that the judge who presided over the preliminary examination was biased against him, counsel was not ineffective for failing to move for the judge to be disqualified. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner next claims that trial counsel was ineffective for failing to object to the admission of the victim's medical records at the preliminary examination and again at trial, specifically challenging the admission of B.T.'s statement taken at the hospital and the description of her demeanor. (ECF No. 1, Petition, PgID 30–31.) The post-conviction judge rejected these claims, finding that the medical records were admissible pursuant to M.R.E. 902(11). (ECF No. 6-12, PgID 812, 814.)

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The post-conviction judge determined that the medical records were admissible under Michigan law. This Court must defer to that determination in resolving Petitioner's ineffective assistance of counsel claim. *See Brooks v.*

*Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject this specific ineffective assistance of trial counsel claim. *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

Petitioner next contends that trial counsel was ineffective for failing to move for the suppression of Petitioner's statement to Trooper Dale Hongisto because Petitioner was not advised of his *Miranda* rights. (ECF No. 1, Petition, PgID 27–29.) The post-conviction judge rejected this claim, finding that *Miranda* warnings were not necessary because Petitioner was not in custody when he spoke to Trooper Hongisto. (ECF No. 6-12, PgID 812.)

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings must be given to a suspect:

1. the person has a right to remain silent;
2. that any statement he does make may be used against him;
3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda*, 384 U.S. at 444.

Police officers are not required to administer *Miranda* warnings to every person whom they question, nor are officers required to administer *Miranda* warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.* "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F.3d 604, 632 (6th Cir. 2003).

Two inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt that he was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

In the present case, Petitioner was not in custody for purposes of *Miranda*. He voluntarily appeared at the state police post to speak with Trooper Hongisto. *See Biros v. Bagley*, 422 F.3d 379, 389-90 (6th Cir. 2005) (holding that the defendant was not "in custody" for *Miranda* purposes when he voluntarily presented himself at the police station).

14

Without any significant evidence suggesting that Petitioner was subjected to custodial interrogation within the meaning of *Miranda*, "a fairminded jurist could conclude that counsel acted reasonably in choosing not to move for suppression" of Petitioner's statement. *See Wilkens v. Lafler*, 487 F. App'x 983, 993 (6th Cir. 2012). Moreover, Petitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness, "because, even if his counsel had filed the motion to suppress, the trial court would have certainly denied it as meritless." *Id.* at 994.

Petitioner next contends that trial counsel was ineffective for failing to object to the judge's final instructions concerning possible verdicts, when the judge advised the jurors that they could find Petitioner guilty or not guilty. (ECF No. 1, Petition, PgID 25.) Petitioner argues that by stating the guilty verdict option first, the judge diluted the presumption of innocence. (*Id.*)

The listing of the option of "not guilty" last did not violate the presumption of innocence because the instruction, when combined with the trial court's instructions on the presumption of innocence and the burden of proof, simply suggested an order of consideration. *See People v. Cavanaugh,* 127 Mich. App. 632, 643 (1983). A trial court judge's instruction to jurors on the order of deliberations does not violate the presumption of innocence or coerce a verdict, so long as the jury is instructed on the presumption of innocence and the prosecutor's burden of proof. *See Meade v. Lavigne,* 265 F.Supp.2d 849, 862–63 (E.D. Mich. 2003). The judge instructed the

jurors that Petitioner was presumed innocent, that the prosecution had the burden of proving Petitioner guilty beyond a reasonable doubt, and that if the prosecutor did not do so, the jury was required to find Petitioner not guilty. (ECF No. 6-9, Trial Transcript PgID 667.) Furthermore, as the post-conviction judge indicated in rejecting this claim, the verdict form listed the option of a not guilty verdict first, negating any favoritism or an attempt by the judge to influence the jury. (ECF No. 6-12, PgID 813.) There was no basis for counsel to object to the judge's instruction, so counsel was not ineffective for failing to do so.

Petitioner next contends that trial counsel was ineffective for failing to move for the sequestration of Trooper Hongisto, the officer in charge of this case. (ECF No. 1, Petition, PgID 29–30.)

M.R.E. 615 indicates that the trial court may not exclude "an officer or employee of a party which is not a natural person designated as its representative by its attorney." Trooper Hongisto, as the officer in charge of the case, would have fallen within this exception for witness sequestration under Rule 615. Trial counsel was not ineffective for failing to move for his sequestration. *See United States v. Lott*, 365 F. App'x 946, 950 (10th Cir. 2010).

Petitioner next contends that trial counsel should have objected to the prosecutor's closing remark: "our worst nightmare was [BT's] reality." (ECF No. 1, Petition, PgID 31–32.) In rejecting this claim, the post-conviction judge ruled that

this brief comment did not deprive Petitioner of a fair trial because the jurors were instructed that they should not let sympathy or prejudice influence their verdict and there were no other improper comments. (ECF No. 6-12, PgID 814.)

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643–45.

The prosecutor's comment, even if it was an attempt to invoke sympathy from the jury, would not entitle Petitioner to habeas relief because the remark was relatively isolated, was not extensive, and was only a small part of a closing argument focused on summarizing the evidence. *Byrd v. Collins,* 209 F.3d 486, 532 (6th Cir 2000). This portion of Petitioner's claim would also be defeated by the fact that the trial court twice instructed the jury that they were not to let sympathy or prejudice influence their decision (ECF No. 6-9, Trial Transcript, PgID 665–66); *see Cockream v. Jones,* 382 F. App'x 479, 486 (6th Cir. 2010); *see also Welch v. Burke*,

49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999). Finally, "even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since the nature of the crime itself would have produced juror sympathy even before the prosecutor made [the comment]." *Millender v. Adams,* 187 F. Supp. 2d 852, 875–76 (E.D. Mich. 2002) (citing *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000)).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas Petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). The prosecutor's comment did not deprive Petitioner of a fundamentally fair trial. Petitioner is unable to establish that he was prejudiced by counsel's failure to object to this remark. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner next contends that trial counsel was ineffective for failing to call Petitioner's two sons to testify that the victim had sex with another man named Brandon Cole. (ECF No. 1, Petition, PgID 32–33.) The judge on post-conviction review rejected this claim because the trial judge had ruled that such evidence was inadmissible under Michigan's Rape Shield Act and this ruling was upheld on review by the Michigan Court of Appeals. (ECF No. 6-12, PgID 814–15.)

The Michigan Court of Appeals concluded that any testimony concerning a

sexual relationship between the victim and Mr. Cole would have been inadmissible

under Michigan's rape-shield statute as follows:

> Here, the trial court properly determined that the evidence concerning the victim's sexual conduct with Cole was inadmissible. Because the victim's conduct with Cole occurred after she reported the events at issue here, that conduct could not have played a role in her decision to report the abuse. For the same reason, that sexual activity could not have affected the medical testimony that the victim's examination was consistent with having been sexually penetrated. Moreover, to the extent Turner implies that his daughter must have been engaging in sexual activity with Cole prior to her report, there is no evidence to support that contention. Accordingly, the evidence that the victim had engaged in sexual conduct with Cole after her report was irrelevant and inadmissible.

*People v. Turner*, No. 317095, 2014 WL 5306092, at *2.

Both the trial judge and the Michigan Court of Appeals concluded that

evidence of the victim's sexual conduct was inadmissible under Michigan's Rape

Shield Law. This is an issue of state law that is binding on this Court in reviewing

Petitioner's state court convictions. *Dufresne v. Palmer*, 876 F.3d 248, 258 (6th Cir.

2017) (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam), and *Estelle

v. McGuire*, 502 U.S. 62, 67–68 (1991)). Because the proposed evidence of a sexual

relationship between the victim and Mr. Cole was deemed by the trial judge and the

Michigan Court of Appeals to be barred by Michigan's rape shield law, Petitioner

failed to show that trial counsel was ineffective in failing to present this evidence.

*Dufresne v. Palmer*, 876 F.3d at 258 (finding that appellate counsel's failure to argue

that trial counsel should have interviewed and presented additional witnesses at trial did not constitute ineffective assistance of counsel where testimony by potential witness would have been inadmissible under Michigan's rape-shield statute).

Petitioner in his third claim alleges that appellate counsel was ineffective for not raising Petitioner's various ineffective assistance of trial counsel claims on Petitioner's appeal of right. (ECF No. 1, Petition, PgID 35.)

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (per curiam) ("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Because trial counsel was not ineffective, Petitioner is unable to establish that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his appeal of right. *See e.g. Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008).

Petitioner in his fourth claim argues that he is entitled to habeas relief because of the cumulative errors of trial counsel. (ECF No. 1, Petition, PgID 37.)

Because the individual claims of ineffectiveness alleged by Petitioner are all meritless or were of slight importance, Petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Alder v. Burt,* 240 F. Supp. 2d 651, 675 (E.D. Mich. 2003). In this case, Petitioner has taken the "'kitchen sink' approach to habeas by alleging that virtually every aspect of his trial counsel's representation was improper and prejudicial." *Ross v. United States,* 339 F.3d 483, 491 (6th Cir. 2003). However, a federal court's role on habeas review of a state court conviction "is not to nitpick gratuitously counsel's performance," since the issue is ultimately a habeas Petitioner's right to a fair trial, not perfect representation. *Smith v. Mitchell,* 348 F.3d 177, 206 (6th Cir. 2003). Petitioner's remaining claim is meritless.

The Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–

84 (2000). When a district court rejects a habeas Petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court also denies Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.  CONCLUSION

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ of habeas corpus. The Court further DENIES a certificate of appealability and leave to appeal *in forma pauperis*.

IT IS  SO ORDERED.

Dated: July 7, 2020                         s/Paul D. Borman
                                            Paul D. Borman
                                            United States District Judge